**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| Sameirow Carter<br>    8673 Greenbelt Road, Apt. T1<br>    Greenbelt, MD 20770<br><br>                        Plaintiff,<br><br>        v.<br><br>PRINCE GEORGE'S COUNTY<br>    County Administration Building<br>    14741 Governor Oden Bowie Drive<br>    Upper Marlboro, MD 20772-3050<br>    (Prince George's County)<br><br>MARY LOU MCDONOUGH<br>    Prince George's County Department of Corrections<br>    13400 Dille Drive, Upper Marlboro, MD 20772<br>    (Prince George's County)<br><br>CORRECTIONAL OFFICER GRANVILLE,<br>CORRECTIONAL OFFICER OLIGIE<br>CORRECTIONAL OFFICER CLARK,<br>CORRECTIONAL OFFICER FOWLER<br>    Prince George's County Department of Corrections<br>    13400 Dille Drive<br>    Upper Marlboro, MD 20772<br>    (Prince George's County)<br><br>                        Defendants. | Civil Action No. _____ |

**COMPLAINT**

Plaintiff Sameirow Carter, by and through her undersigned counsel, brings this action against Prince George's County *et al.*, and states as follows:

**<u>NATURE OF THE ACTION</u>**

1.     Sameirow Carter was detained at the Prince George's County Correctional Center

("PGCCC"), in Upper Marlboro, Maryland for one night, starting on August 21, 2017, and ending on the morning of August 22, 2017.

2.      During Ms. Carter's detention at PGCCC, she was targeted, attacked, punished, and subjected to inhumane and dangerous conditions by the Defendants.

3.      Ms. Carter was unjustifiably placed in four-point restraints by correctional officers, physically attacked by another, and forced to urinate on herself while shackled to the bench in her cell.

4.      These acts and omissions by the Defendants have caused Ms. Carter to suffer significant physical and mental injuries, as well as pain and suffering.

5.      The behavior of the Defendants was, and remains, part of a widespread policy, practice, and/or custom of which the County actually knew and deliberately failed to correct, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

6.      The County is also required by statute to indemnify its employees, including the Defendants, for damages resulting from their tortious acts or omissions within the scope of their employment.  MD. CODE ANN. CTS. & JUD. PROC. § 5-303.

## JURISDICTION AND VENUE

7.      This is a civil rights action under 42 U.S.C. § 1983 for deprivation of Ms. Carter's rights under the Eighth and Fourteenth Amendments to the Constitution.

8.      The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

9.      The Court has personal jurisdiction over each Defendant because the Defendants work in Maryland and have committed the acts alleged below in Maryland.  MD. CODE ANN. CTS. & JUD. PROC. §§ 6-201, 6-102, and 6-103.2; *see also* FED. R CIV. P. 4(e)(1).

141482421.3

10.     Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

11.     Plaintiff Ms. Carter was detained at PGCCC for one night, starting on August 21, 2017, and ending on the morning of August 22, 2017, including at all times relevant to this action.

12.     Defendant Prince George's County ("the County"), Maryland is a municipal corporation formed under the provisions of Art. XI-A of the Maryland Constitution.

13.     Defendant Director Mary Lou McDonough currently serves as the Director of PGCCC.  On information and belief, at all times relevant to this action, Ms. McDonough was employed by PGCCC and the County, and acted under color of state law.

14.     Defendant Correctional Officer Granville ("Officer Granville") is a correctional officer at PGCCC.   On information and belief, at all times relevant to this action, Officer Granville was employed by PGCCC and the County, and acted under color of state law.

15.     Defendant Correctional Officer Oligie ("Officer Oligie") is a correctional officer at PGCCC.  On information and belief, at all times relevant to this action, Officer Oligie was employed by PGCCC and the County, and acted under color of state law.

16.     Defendant Correctional Officer Clark ("Officer Clark") is a correctional officer at PGCCC. On information and belief, at all times relevant to this action, Officer Clark was employed by PGCCC and the County, and acted under color of state law.

17.     Defendant Correctional Officer Fowler ("Officer Fowler") is a correctional officer at PGCCC. On information and belief, at all times relevant to this action, Officer Fowler was employed by PGCCC and the County, and acted under color of state law

141482421.3

## BACKGROUND

18.     Ms. Carter was held in custody at PGCCC for one night, starting on August 21, 2017, and ending on the morning of August 22, 2017.

19.     Upon arrival at the PGCCC processing room, Ms. Carter asked to place a phone call.

20.     Officer Oligie denied that request and instead taunted Ms. Carter regarding her one-day sentence.

21.     After Ms. Carter responded by downplaying the significance of the sentence, Officer Oligie placed Ms. Carter in a holding cell for being "aggressive."

22.     Once in the cell, Ms. Carter asked to be let out of the cell to use the regular restroom in the adjacent room, rather than using the toilet in the cell that was visible to all other persons waiting in the processing room.

23.     Officer Oligie ignored Ms. Carter's multiple requests, even though she knocked on the cell door and plexiglass to get his attention.

24.     Annoyed with Ms. Carter's protestations, Officer Granville ordered that Ms. Carter be placed in four-point restraints.

25.     On information and belief, two female officers—Officers Clark and Fowler—then shackled Ms. Carter to a bench in the cell, thereby limiting her range of motion.

26.     After being shackled, Officer Granville assaulted Ms. Carter by punching her in the face.

27.     Because her range of motion had been limited, Ms. Carter was forced to urinate on herself while shackled to the bench.

28.     Officers Granville, Oligie, Clark, and Fowler left Ms. Carter shackled to the

4

bench until the next morning when she was released.

29. Officers Granville, Oligie, Clark, and Fowler restrained and assaulted Ms. Carter without justification, provocation, cause, or excuse.

30. In doing so, they violated Ms. Carter's civil rights and failed to obey the laws enacted for the welfare, benefit, and protection of the citizens of the United States and the State of Maryland.

31. As a direct result of these officers' actions, Ms. Carter suffered physical pain and suffering, embarrassment, humiliation, emotional distress, and loss of liberty.

32. The punch to Ms. Carter's face required medical attention, her wrists were injured by the restraints, and, two weeks after her release, Ms. Carter suffered a miscarriage caused by stress associated with the assault.

33. Throughout Ms. Carter's time at PGCCC, a widespread, unconstitutional policy, practice, and/or custom existed whereby officers PGCCC engaged in use of excessive force.

34. The actions of Officers Granville, Oligie, Clark, and Fowler were performed in accordance with this generally known and widespread policy, practice, and/or custom.

35. On information and belief, the County and Director McDonough were actually or constructively aware of the unconstitutional acts perpetuated by Officers Granville, Oligie, Clark, and Fowler described above. Additionally, on information and belief, the County and Director McDonough were actually or constructively aware that a widespread policy, practice and/or custom has been in effect in PGCCC due at least in part to the widespread nature and recurring frequency of such acts.

36. On information and belief, the County and Director McDonough have condoned this unconstitutional policy, practice, and/or custom. For example, on information and belief, the

County and Director McDonough have failed to adequately punish officers—including Officers Granville, Oligie, Clark, and Fowler—for acts performed pursuant to this unconstitutional policy, practice, and/or custom.

37.    Other examples abound.

38.    For example, in 2016 or 2017, PGCCC Correctional Officers Horn and Houston entered the cell of then-detainee Steve Jamal Smith for a roster count, and they beat him up and maced him.  On information and belief, the Adjustment Committee at DOC reviewed the actions of Officers Horn and Houston, but failed to charge either officer with any violations, failed to discipline them, and failed to require additional training of them.

39.    For example, on February 19, 2016, Correctional Officers Kevin Reid and Everett Cusseaux attacked and maced a PGCCC detainee, Juan Alex Randolph, Jr., while he was in his cell. On information and belief, the County failed to discipline, punish, transfer, counsel, or terminate Officers Reid and Cusseaux based on their actions.

40.    For example, on June 14, 2016, Correctional Officers Bryan Potter, Andrew Parsons, Nnachi Igwe, and Desmond Montgomery left Mr. Randolph alone in his cell overnight while bound in four-point restraints and denied Mr. Randolph his breakfast.  On information and belief, although the County conducted an investigation into the incident and found that Mr. Randolph was improperly left in four-point restraints in his cell, the County provided no additional training to the officers, did not require the officers to review any policies or procedures, made no changes to the officers' assignments, and otherwise made no serious effort to correct the officers' behavior. Rather, on information and belief, Officers Potter, Parsons, and Igwe received minor discipline, and Officer Montgomery received no punishment at all.

141482421.3

41.     For example, on or around July 3, 2016, Officer Parsons came to Mr. Randolph's cell in H-5 and punched Mr. Randolph in the face while he was sleeping in his bed.  On information and belief, although Officer Parsons admitted that he punched Mr. Randolph in the face, the County failed to discipline, punish, transfer, counsel, or terminate Officer Parsons based on his actions.

42.     For example, on or around July 21, 2016, Officers Cusseaux and Kevin Tolbert made Mr. Randolph come out for recreation with detainees he was supposed to be separated from for his own safety.  On information and belief, the County failed to discipline, punish, transfer, counsel, or terminate Officers Cusseaux and Tolbert based on their actions.

43.     For example, in or around February 2017, PGCCC Correctional Officer Gray violently attacked detainee Adrian Terrell Duncan by beating Mr. Duncan with his fists.  On information and belief, the County failed to discipline, punish, transfer, counsel, or terminate Officer Gray for those actions.

44.     For example, in or around April or May 2017, PGCCC Officers Jackson and Watkins violently attacked Mr. Duncan by punching him while he was in his cell. On information and belief, the County failed to discipline, punish, transfer, counsel, or terminate Officers Jackson and Watkins for their actions.

45.     For example, on December 22, 2017, Officers Jeter, Thompson, and Lewis violently attacked Mr. Duncan.  Officer Jeter punched Mr. Duncan while he was climbing the stairs leading to the second-floor shower at PGCCC, and then pushed Mr. Duncan, causing him to collapse on the stairs.  Officer Jeter dragged Mr. Duncan down the stairs to the first floor, causing the back of Mr. Duncan's head to hit each step on the way down.  Once Mr. Duncan was on the ground of the first floor, Officer Jeter crouched down, straddled Mr. Duncan, and began to

punch him repeatedly across his face and body. Mr. Duncan, still handcuffed, tried to curl into a ball to protect himself, but Officer Jeter continued beating Mr. Duncan.

46.     While Officer Jeter was attacking Mr. Duncan, Officer Thompson was on a telephone call at the officer desk several feet away. Officer Thompson called a Signal 13 over the PGCCC radio and maced Mr. Duncan with oleoresin capsicum foam, while Officer Jeter continued to attack him. On information and belief, a Signal 13 is a radio signal for "officer in trouble" and is called when there is a fight between a correctional officer and a detainee at DOC. After macing Mr. Duncan, and after giving Officer Jeter the opportunity to attack Mr. Duncan unimpeded, Officer Thompson eventually attempted to separate Officer Jeter from Mr. Duncan by standing in between them. Nevertheless, Officer Jeter continued to attack Mr. Duncan until the Emergency Response Team ("ERT") arrived in response to the Signal 13 call. On information and belief, the ERT at PGCCC handles urgent situations such as fights and medical emergencies. Throughout the encounter with Officer Jeter and Officer Thompson, Mr. Duncan was handcuffed, lying in a ball on the floor.

47.     Officer Lewis, who is a member of the ERT, later transported Mr. Duncan to the medical unit, but repeatedly twisted Mr. Duncan's handcuffed arms, and slammed him against the hallways in the process.

48.     On information and belief, the County failed to discipline, punish, transfer, counsel, or terminate Officers Jeter, Thompson, and Lewis for their actions.

49.     On information and belief, Officer Jeter alone assaulted eight detainees at PGCCC in 2017, including Mr. Duncan, Stephon Alexander Robinson, Demetrice Littles, Anthony Davis, and Jovan Anthony Ali. On information and belief, the County was actually or constructively aware of Officer Jeter's assaults in 2017, but it failed to charge Officer Jeter with any violations,

141482421.3

failed to discipline him, and failed to require additional training of him.

50.     For example, on December 15, 2017, Officer Oligie was captured on surveillance video knocking an inmate to the ground and then continuing to assault the inmate once on the ground.  The inmate was being processed into the jail at the time.

51.     Ms. Carter's physical and mental injuries, and pain and suffering, were caused by and pursuant to the unconstitutional policy, practice, and/or custom detailed above.

## COUNT I

**(42 U.S.C. § 1983 Claim for Excessive Force Under the Eighth and Fourteenth Amendments Against Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler)**

52.     Ms. Carter realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

53.     As described above in paragraphs 19–28, Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler taunted, restrained, and physically attacked Ms. Carter.

54.     Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler, while acting under color of state law, deliberately, purposefully, and knowingly used force against Ms. Carter that was objectively unreasonable, unjustified, and excessive, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

55.     There was no legitimate law enforcement or prison management purpose for Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler to attack Ms. Carter; rather, Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler maliciously, wantonly and sadistically applied excessive force for the purpose of causing harm to Ms. Carter.

56.     The conduct of Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler is a direct and proximate cause of the harm Ms. Carter has suffered, and continues to suffer, including serious physical injuries, psychological injuries, and pain and suffering.

141482421.3

57.     As a direct and proximate result of the conduct of Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler, Ms. Carter suffered, and will continue to suffer, serious physical injuries, psychological injuries, and pain and suffering, including a miscarriage two week after her release.

58.     Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler acted with reckless and callous indifference to Ms. Carter's Eighth and Fourteenth Amendment rights under the United States Constitution.

## COUNT II

**(42 U.S.C. § 1983 Claim for Detention in Inhumane Conditions Under the Eighth and Fourteenth Amendments Against Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler)**

59.     Ms. Carter repeats and incorporates by reference each of the preceding paragraphs.

60.     As described above in paragraphs 19–28, Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler caused Ms. Carter to be detained in four-point restraints overnight, severely limiting her range of movement, solely to cause harm to Ms. Carter.

61.     The actions of Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler caused Ms. Carter to urinate on herself while shackled to the bench in her cell overnight.

62.     Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler, while acting under color of state law, deliberately, purposefully, and knowingly subjected Ms. Carter to a substantial risk of serious harm in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

63.     Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler actually knew that Ms. Carter was facing imminent, substantial, and excessive risk of serious harm because of her being shackled in four-point restraints to the bench in her cell.

141482421.3

64.     There was no legitimate law enforcement or prison management purpose for Officer Granville's, Officer Oligie's, Officer Clark's, and Officer Fowler's conduct; rather, the aforementioned Officers acted maliciously to increase the risk of harm to Ms. Carter. Alternatively, Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler acted with deliberate indifference to the risk their actions posed to Ms. Carter's health and safety.

65.     The conduct of Officer Granville, Officer Oligie, Officer Clark, and Officer Fowler is a direct and proximate cause of the harm Ms. Carter has suffered, and continues to suffer, including serious physical injuries, psychological injuries, and pain and suffering.

## COUNT III

**(42 U.S.C. § 1983 Claim for Unconstitutional Policy, Practice, and/or Custom Under the Eighth and Fourteenth Amendments Against Prince George's County and Director McDonough)**

66.     Ms. Carter repeats and incorporates by reference each of the preceding paragraphs.

67.     Defendant Prince George's County maintains one or more policies, practices, and/or customs including, *inter alia*, engaging in use of excessive force against detainees.

68.     The unconstitutional acts alleged above in Counts I and II were each performed pursuant to these policies, practices, and/or customs.

69.     These policies, practices, and/or customs of the County violate the constitutional rights of Ms. Carter and other detainees at PGCCC under the Eighth and Fourteenth Amendments.

70.     The County was actually or constructively aware of the unconstitutional acts perpetuated by the Defendants identified above in connection with Counts I and II.  Additionally, the County was actually or constructively aware that widespread unconstitutional policies, practices, and/or customs have been in effect at PGCCC due at least in part to the widespread nature

11

and recurring frequency of such acts.

71.     The County has condoned these unconstitutional policies, practices, and/or customs, and it is responsible for their continued existence.

72.     The County's unconstitutional policies, practices, and/or customs are a direct and proximate cause of the harm Ms. Carter has suffered, and continues to suffer, including serious physical injuries, psychological injuries, and pain and suffering.

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Carter respectfully requests that this Court grant her the following relief:

(a)     Compensatory damages for Ms. Carter's physical injuries, psychological injuries, and pain and suffering;

(b)     Punitive damages in an amount according to proof and which is fair, just, and reasonable;

(c)     Attorneys' fees and the costs of this action pursuant to 42 U.S.C. §§ 1988 and 1997e(d); and

(d)     Such other further relief as the Court may deem just and proper and to which Ms. Carter may be entitled.

Plaintiff demands a trial by jury.

Dated:  January 11, 2019                    By:  /s/ *Dwayne D. Sam*
                                                  Dwayne D. Sam (Bar Number 29947)
                                                  DSam@perkinscoie.com
                                                  Andrew G. McBride (*pro hac vice pending*)
                                                  AMcBride@perkinscoie.com
                                                  Brenna D. Duncan (*pro hac vice pending*)
                                                  BDuncan@perkinscoie.com
                                                  **PERKINS COIE LLP**
                                                  700 Thirteenth Street, N.W., Suite 600
                                                  Washington, D.C.  20005-3960
                                                  Telephone:  202.654.6282
                                                  Facsimile:  202.654.6532

                                                  *Counsel for Plaintiff*
                                                  *Sameirow Carter*